## J. H. RAYMOND v. PAIA PLANTATION COMPANY.

EXCEPTIONS FROM CIRCUIT COURT, FIRST CIRCUIT.

SUMITTED MARCH 23, 1898.        DECIDED JUNE 21, 1898.

JUDD, C.J., FREAR AND WHITING, JJ.

A contract fixing the charge for expenses of a patient at a hospital to include everything would include a surgeon's charge for capital operations though not expressly mentioned.

OPINION OF THE COURT BY JUDD, C.J.

This is an action of assumpsit by which the plaintiff, being a physician and surgeon, seeks to recover $250 of the Paia Plantation, defendant, a domestic corporation, for medical and surgical services rendered to a Japanese laborer at defendant's special instance and request at Wailuku, Maui, within the month of October, 1896. The jury of the Circuit Court, First Circuit, where the case was tried, found for the plaintiff in the sum claimed and the defendant corporation brings exceptions.

The following are the undisputed facts: In October, 1896, a Japanese laborer in the employ of the Paia Plantation, being seriously ill of an intestinal disease, was by the advice of the plantation physician sent by the manager of the plantation to the Malulani Hospital at Wailuku for treatment. The hospital

is a government institution and the plaintiff its physician and surgeon. As a result of plaintiff's diagnosis he considered it advisable to perform a capital operation, to which the patient consented, and it was accordingly performed by plaintiff, but the patient did not survive, owing to his weak condition and the progress the disease had made. No question is raised as to the advisability of the operation or the skill of its performance.

It is claimed by plaintiff that by Rule No. 13 of the rules of the Board of Health respecting the Malulani Hospital, dated April 29, 1889, reading, "The surgeon in charge will be allowed to make a reasonable charge for capital operations to patients able to pay," he was authorized to make the charge. We remark that Rule 13 rescinded a previous rule of the Board of Health, being Rule 4 of the rules of the Malulani Hospital of June, 1887, that "No medical charge will be made, or allowed, in addition to the hospital expenses paid by pay patients except for professional services other than that of the government physician which may be called in by pay patients in private rooms." The defendant contends that by a contract made in January, 1889, with the Board of Health it was only liable to pay seventy-five cents per day for such ward patients not Hawaiians as it might send to the hospital, the said charge to cover everything; and that not having had notice of Rule 13, it is not liable to the plaintiff. It is in proof that defendant had no actual notice until after the operation in question. The main question before the jury was whether any such contract was made. If no contract had been made then the defendant sending a patient to the hospital would be bound by its rules as to terms and conditions and the defendant would be liable according to Rule 13.

The evidence offered by defendant to prove the alleged contract was the testimony of the present President of the Board of Health, W. O. Smith, Esq., and of Mr. H. P. Baldwin, defendant corporation's president and general superintendent, and Sister Bonaventura, the sister superintendent in charge of the hospital. Mr. Baldwin said in substance that being about to build a private hospital for the Paia and Haiku plantations, under his

superintendent, the charge by the Malulani Hospital of $1 per diem for patients sent by him being by him considered too high, the late T. W. Everett, agent of the Board of Health, made a contract (oral) with him that if he did not erect the proposed hospital and would send all his sick to the Malulani Hospital, the charge would be seventy-five cents a day, to cover everything. Mr. W. O. Smith understood that this contract was in force.

A resolution was adopted by the Board of Health, 28th January, 1889, as follows: "It is formally agreed by the Board of Health that the rate of pay for the ward patients at the Malulani Hospital at Wailuku, Maui, should be 75 cents per day." A letter dated January 19, 1889, from Mr. Everett, "Agent of the Board of Health for Maui," to Dr. N. B. Emerson, President of the Board of Health, was offered in rebuttal by the plaintiff, presumably to show that no contract had been made by Mr. Everett with the Paia Plantation. On defendant's objection it was refused admission. The letter is sent up with the defendant's exceptions and its rejection not having been taken up by a perfected exception by plaintiff, he having a verdict in his favor, we cannot consider it. But if it had been admitted it would have thrown light upon the question of contract or no contract, and different interpretations of its effect would undoubtedly have been put upon it by counsel on either side. The testimony is that no capital operation on a patient sent by the Paia Plantation had been performed until the case in question by the plaintiff. In this connection, therefore, we fail to see why Mr. Baldwin was not allowed to testify on the subject of a capital operation performed at the hospital on a patient sent there by the Haiku Plantation. Haiku was under the same contract as Paia, if there was a contract at all. If admitted it would tend to show what the contract was as understood by the hospital authorities and the Paia Plantation. Unfortunately for defendant the exception to the refusal to admit this testimony has been abandoned by defendant's counsel and we cannot consider it as ground for allowing a new trial. If a contract existed in 1889

between the Board of Health and the defendant corporation that the charge of 75 cents per day for each ward patient sent was "to cover everything," then its legal construction would be that it disallowed any charge for capital operations. But the trial court charged against defendant's objection (Instruction 6) that "in order to defeat the plaintiff's right to recover in this action a reasonable compensation, the contract between the defendant and the Board must have been an express one that the charge of seventy-five cents a day for each laborer was to cover all expenses of the hospital and that no further charge was to be made for capital operations, and it is necessary that the minds of the parties should have met as to the terms of the contract. If one party understood that capital operations were to be included in that charge of seventy-five cents a day, and the other understood the contrary, that such charge was not to cover capital operations, then the minds of the parties did not meet and no contract was made sufficient to defeat the plaintiff's claim."

Following is Instruction 6 asked for by defendant and refused by the court: "If you find that an express agreement was made between Mr. Baldwin and the agent of the Board of Health that seventy-five cents a day would include "all expenses" or include 'everything,' that would include capital operations whether expressly mentioned at that time or not."

The charge of the Court and the refusal to charge Instruction 6 left to the jury what should have been held by the court, and the result might have been different if the charge had not been made, and the instruction given.

Defendant's Instruction 4 was also refused. It reads: "Under the rules of the hospital a charge for capital operation is allowed only in cases of patients able to pay, and before the plaintiff can recover he must show that this patient was able to pay." On this subject the court charged: "As to the clause in the rules of 1889, relating to ability to pay, I charge you that it is the defendant corporation's ability to pay that you must look to, and not that of the Japanese laborer." And also: "As to whether the fee charged is reasonable or not is for you to say

upon the evidence, and if your verdict is for the plaintiff then it will be for such an amount as you believe from the evidence to be a reasonable compensation for the services."

The court was right when it said that it was the ability of the plantation to pay that must be looked to, but it did not go far enough. We agree that the plantation must be regarded as a quasi guarantor of the fee. But the amount of the fee in this case ought to be that which the surgeon would charge a person in like circumstances as the patient, if able to pay. What would be a reasonable fee for the operation in question to a person of large wealth and high standing would not be a gauge of the fee in the present case.

A new trial is ordered.

*A. G. M. Robertson* for plaintiff.
*Kinney & Ballou* for defendant.